

## BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**November 9, 2015**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 11:15 A.M.

| | | |
|---|---|---|
| Joseph Kolby Willis | ) | Docket No. 2014-05-0005 |
| | ) | |
| v. | ) | State File No. 57582-2014 |
| | ) | |
| All Staff | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

---

### Reversed and Remanded — Filed November 9, 2015

---

The employee dislocated his kneecap when he stood from a squatting position in the textile plant where he was working. The employer denied the claim based upon its belief that the employee's injury was idiopathic in nature. In response to a Request for Expedited Hearing, the trial court conducted a review based on the record and found that the employee failed to establish a compensable injury and declined to award benefits. Following a subsequent compensation hearing, the trial court determined that the employee suffered a compensable injury and ordered medical treatment, the payment of outstanding medical bills, and the payment of past temporary disability benefits. The employer has appealed. Having carefully reviewed the record, we reverse the trial court's decision and remand the case for entry of an order dismissing the claim.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

B. Duane Willis, Nashville, Tennessee, for the employer-appellant, All Staff

Gene Hallworth, Columbia, Tennessee, for the employee-appellee, Joseph Kolby Willis

**Factual and Procedural Background**

Joseph Willis ("Employee"), a twenty-three-year-old resident of Lewis County, Tennessee, was employed by All Staff ("Employer"), a staffing agency, and was assigned to work third shift at a textile plant in Columbia, Tennessee. His duties at the plant included moving rolls of scrap fabric to a baler, described in the record as a large trash compactor, and threading wire through ports on the outside of the machine, which compacted the material into bales. Employee had to tie the wire approximately one foot from the floor, requiring him to bend or squat down.

On July 30, 2014, Employee turned off the baler while tying the wire to ensure the machine did not engage. After tying the wire behind the machine, he stood from a squatting position to flip a switch to activate the machine. The area behind the baler was relatively small, and Employee twisted as he stood. He experienced pain in his left leg and saw that his kneecap was displaced. He manipulated his kneecap back into place and his supervisor took him to an emergency room where he was treated and released.

Employee had pre-existing bilateral knee problems and had surgeries in 2005 and 2006 to correct instability in his knees.[1] He also had been diagnosed with "patella alta," a condition that pre-disposed him to kneecap dislocation.

After the July 30, 2014 work incident, Employee sought treatment on August 5, 2014, from Dr. David Moore, the orthopedic surgeon who performed his prior surgeries. Dr. Moore, who was the only medical expert to testify, noted in his records that Employee had been doing well with his knees until he twisted while rising from a squatting position on July 30, 2014. Dr. Moore documented his initial belief that Employee's injury was work-related based on his history of not having problems since the prior surgeries. An MRI ordered by Dr. Moore revealed an acute tear of the medial patellofemoral ligament in Employee's left knee.

Over the ensuing weeks, Employee returned to Dr. Moore, who diagnosed him with knee pain and recurrent patella dislocation, ordered physical therapy, and allowed Employee to return to work with restrictions. Dr. Moore indicated in his notes that Employee would probably need a medial patellofemoral ligament reconstruction. In correspondence dated August 21, 2014, Dr. Moore stated that his initial "impression" was that Employee's "fall at work did directly cause his most recent patellar dislocation."

---

[1] Apparently referring to a letter dated October 28, 2013 from Employee's surgeon, Dr. David Moore, the trial court, in its expedited hearing order filed on November 10, 2014, incorrectly stated that Employee had two surgeries on his left knee, one in 2005 and the other in 2007. The letter actually reflects that Employee underwent surgery on his left knee in 2005, his right knee in 2006, and was released from Dr. Moore's care in 2007. The record contains an identical letter signed by Dr. Moore dated June 10, 2013.

Employee filed a Petition for Benefit Determination seeking medical and temporary disability benefits and requested that the trial court render a decision based on the record alone.[2] *See* Tenn. Comp. R. & Regs. 0800-02-21-.02(19) (2015). The trial court did so upon finding that no additional information was needed and, pursuant to Rule 0800-02-21-.14(1)(c) (2015), filed an expedited hearing order on November 10, 2014, finding that the "employment did not contribute at least 50% in causing the injury." The trial court explained that "[t]he fact that the injury occurred while Employee was at work does not convert it into a workers' compensation injury," and that "Employee is unlikely to succeed at a hearing on the merits." The trial court also determined that Employee's knee injury was idiopathic in nature, that no special hazard or condition of his work contributed to his injury, and that he "simply stood up, twisted the wrong way, and his kneecap dislocated." Accordingly, the court declined to award any benefits. No appeal of that order was filed, and Employer subsequently filed a motion to dismiss the claim pursuant to Tennessee Code Annotated section 50-6-239(d)(4) (2014). Although a hearing was held on Employer's motion, the trial court took no further action regarding the motion.

Some six months after the trial court entered its expedited hearing order, the parties deposed Dr. Moore on May 22, 2015. Dr. Moore testified that Employee informed him he had been doing well since his previous surgeries and that his kneecap dislocated at work when he was rising from a squatting position. When asked whether pulling parcels of fabric across the floor could have contributed to the patellar dislocation, Dr. Moore testified that it was "possible" if doing so caused Employee's legs to become fatigued and that fatigue "would have helped contribute to his injury." He further testified that it would be "speculation" for him to render an opinion in that regard because Employee had not provided a history of having fatigue in his legs. Dr. Moore also testified that Employee had "patella alta," which pre-disposed him to kneecap dislocation. Further, Dr. Moore testified that Employee's injury could have occurred while rising from a squat to a standing position regardless of where he was at the time and that his body weight and mechanics could have caused his knee to dislocate as he was standing up, "tight space or not."

At a bifurcated trial on July 20, 2015, Employee, the only witness to testify in person, stated that his job involved recycling rolls of scrap material by placing the material in the baler or compactor. According to Employee, the rolls ranged in weight

---

[2] The trial court has the authority to "issue an interlocutory order either awarding or denying temporary disability or medical benefits based on a review of the documents submitted and without convening a formal hearing." Tenn. Comp. R. & Regs. 0800-02-21-.02(13) (2015). *See also* Tenn. Code Ann. § 50-6-239(d)(2) (2014). However, the trial court also has the "discretion to convene a hearing of a motion for temporary disability or medical benefits if the judge determines that convening a hearing is necessary to determine the issues presented." Tenn. Comp. R. & Regs. 0800-02-21-.02(13) (2015). In this case, the trial court chose the former option.

from eighty to more than seven hundred pounds, which he had to drag forty to fifty feet across the floor. Employee stated that his legs had been hurting for approximately a week before he dislocated his knee and that, as he was standing up from tying wire to the baler on July 30, 2014, he felt pain in his left knee and saw that his kneecap was out of place. He sought help and was taken by his supervisor to an emergency room where he was treated and released. He admitted that he was not lifting anything when the incident occurred and that the floor where he was working was level and free of hazards.

Employee attributed his prior knee problems to "several years of football." He denied having problems with his knees since his surgeries in 2005 and 2006, but did acknowledge having occasional pain in his knees. Employee stated that, at the time of trial, his left knee was "fine" and that he could "work on it," though he does have occasional pain and "a little bit of instability."

In a compensation order filed on August 25, 2015, the trial court determined that Employee's knee injury was causally related to the work incident of July 30, 2014. The court found that Employee's work environment presented a special hazard given that he had to squat down in a confined area while tying the wire and that this condition "contributed more than fifty percent in causing his injury." The trial court also found that medical proof of causation was unnecessary because Employee suffered an obvious injury. In the alternative, the trial court ruled that Dr. Moore's testimony satisfied the medical causation standard. Accordingly, Employer was ordered to provide medical treatment, pay past medical expenses related to the injury, and pay past temporary disability benefits. Employer appealed.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

4

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employer does not dispute the existence of Employee's knee injury. Nor is there any dispute that the injury occurred in the course of the employment. Rather, Employer challenges the trial court's finding that the injury arose primarily out of the employment. Employer also argues that the trial court erred in not dismissing the claim before issuing its initial order denying benefits because Employee's Request for Expedited Hearing was not supported by an affidavit as required by Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(a) (2015). In addition, Employer asserts that the trial court erred in denying a motion in limine seeking to exclude Dr. Moore's testimony at trial. Finally, Employer argues that the trial court erred in failing to rule on a motion to dismiss filed after the entry of the expedited hearing order and, further, that the trial court created confusion by providing inconsistent instructions regarding whether the trial would be bifurcated and the nature of the issues that could be addressed.[3]

*Motion to Dismiss*

We first address Employer's argument that the trial court committed reversible error in failing to rule on a motion to dismiss filed by Employer approximately seven months prior to trial. Specifically, following the trial court's initial denial of benefits on November 10, 2014, Employer filed a motion to dismiss the claim pursuant to Tennessee Code Annotated section 50-6-239(d)(4) (2014).[4] As grounds for the motion, Employer relied upon the trial court's finding that Employee's injury was idiopathic in nature and not compensable. Employee responded that he intended to depose a medical expert and submit that evidence at trial and, therefore, dismissal of the case would be premature.

Although a hearing was held on the motion on February 19, 2015, the trial court never ruled on the motion. Employer attached to its appellate brief an email dated April 9, 2015, in which Employer reminded the trial court that the motion to dismiss, filed

---

[3] The argument section of Employer's brief exceeds the fifteen-page limit imposed by Section 5.2 of the Appeals Board's Practices and Procedures. Despite the lack of a motion to exceed that limit, we will, on this occasion, exercise our discretion in favor of considering Employer's brief notwithstanding Employer's failure to comply with Section 5.2.

[4] When temporary disability or medical benefits are denied on the basis that the claim is not compensable and no appeal is filed, as in this case, the trial court "may entertain an appropriate motion from the employer for dismissal of the claim." Tenn. Code Ann. § 50-6-239(d)(4) (2014). *See also* Tenn. Comp. R. & Regs. 0800-02-21-.14(3) (2015).

some four months earlier on January 20, 2015, was still pending. The trial judge replied in an email indicating the court would send out an order, but no order was forthcoming.

"It is well-settled that a trial court speaks through its written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015). It is also well-established that, although "[a] trial court has broad discretion in managing its courtroom and docket," the court is expected to enter orders in a timely fashion and promptly adjudicate the rights of the parties. *Lewis v. Dana Holding Corp.*, No. W2010-01863-WC-R3-WC, 2011 Tenn. LEXIS 461, at *9 (Tenn. Workers' Comp. Panel June 6, 2011). *See also* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014) (the workers' compensation system is intended to be administered in a "fair, equitable, expeditious, and efficient" manner). To do otherwise undermines fundamental fairness and the proper administration of justice.

Here, Employer filed a proper, potentially dispositive motion, and a hearing was held addressing the motion. However, as far as this record shows, the trial court never ruled on it. Employer points out that, had the motion been granted, the parties would have been spared the time and expense of a trial. Employer also points out, correctly, that Tenn. Comp. R. & Regs. 0800-02-21-.14(3) provides that the "judge shall issue an appropriate order" resolving a motion to dismiss following an initial denial of benefits. That was not done in this case. Instead, the motion lay unresolved for approximately seven months. However, given our decision to reverse the trial court's judgment on other grounds, it is unnecessary for us to determine whether we should do so based on the trial court's failure to act on the motion to dismiss.

It must also be noted that the emails to and from the trial court mentioned above were not admitted into evidence or made part of the record but, instead, were attached to Employer's brief. Just as an assertion of fact in a party's brief may not be considered as evidence on appeal, *Rezba v. Rezba*, No. M2014-00553-COA-R3-CV, 2015 Tenn. App. LEXIS 7, at *7 (Tenn. Ct. App. Jan. 7, 2015), documents attached to a brief not included in the record will not be considered by courts on appeal, *State v. Anderson*, No. W2008-00188-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 306, at *56-57 (Tenn. Crim. App. Apr. 9, 2010). Thus, we decline to consider the emails at issue.

*Dismissal Prior to Interlocutory Order*

Employer correctly points out that Employee failed to file a supporting affidavit with his Request for Expedited Hearing as required by Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(a) (2015). This Rule provides that "motions for an expedited hearing must be accompanied by affidavits and any other information demonstrating that the employee is entitled to temporary disability or medical benefits." This issue was not raised in the trial court before the court issued its interlocutory order, and that order was not appealed by either party.

6

It is well-established that, apart from limited exceptions not applicable here, issues not presented to and decided by the trial court will not be considered by courts on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). This rule has been described as a "cardinal principle of appellate practice." *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) (Koch, J., dissenting). Consequently, when a party fails to raise an issue in the trial court, the party waives its right to raise that issue on appeal. *Id.* The rationale for the rule is that the trial court should not be held in error when it was not given an opportunity to rule on the issue or argument being advanced on appeal. *State v. Walker*, 910 S.W.2d 381, 396 (Tenn. 1995). If the rule were otherwise, parties could forego bringing to the trial court's attention a potentially dispositive error or issue and then, if dissatisfied with the outcome, essentially ambush the trial court's decision on appeal based on the error or issue that could have been raised below. *See Gilliam v. State*, No. 03-C-01-9411-CR-00406, 1995 Tenn. Crim. App. LEXIS 351, at *7-8 (Tenn. Crim. App. Apr. 25, 1995) ("Consideration of an issue raised for the first time on appeal would be unfair to the trial court" and to the opposing party.).

To avoid this untenable situation, "[i]t has long been the general rule that questions not raised in the trial court will not be entertained on appeal." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Indeed, in most instances, an issue raised for the first time on appeal will be deemed waived. *See, e.g., Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000); *see also* Appeals Board Prac. & Proc. § 5.5 ("Issues or arguments not raised in the Court of Workers' Compensation Claims will be deemed waived on appeal.").

Here, there is nothing in the record to indicate that Employer raised Employee's failure to file a supporting affidavit as an issue either in the trial court before the court issued its interlocutory order or in an appeal of that order. Thus, consistent with established law, the issue is waived.

*Arising out of Employment*

A.

A key component of the 2013 Workers' Compensation Reform Act is the requirement that the injury for which benefits are sought arise "primarily" out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C)

7

(2014). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014). To say the least, these statutory amendments wrought fundamental changes to how a workers' compensation case is now analyzed.

Significant changes to the analysis did not stop there. For injuries occurring on or after July 1, 2014, the general assembly has made clear that the workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and . . . shall not be construed in a manner favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2015). Moreover, an injured worker may be granted medical or temporary disability benefits prior to trial when he or she presents sufficient evidence to enable the trial court to conclude that the worker "would likely prevail at a hearing on the merits." Tenn. Code Ann. § 50-6-239(d)(1) (2014). In addressing this new statutory language, we have explained:

> [A]n employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system. *See* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014). Moreover, we note that since an expedited hearing is interlocutory in nature, either party may present additional evidence at the final compensation hearing and ask the trial court to reverse or modify the interlocutory order.

*McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9-10 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, at a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2014) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

Traditionally, courts have held that the statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements

8

exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). "The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship*, 164 S.W.3d at 354. Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.,* 270 S.W.2d 389, 390 (Tenn. 1954).

## B.

Guided by the foregoing principles, we turn to the record in this case. Dr. Moore testified that Employee had a condition called "patella alta," which pre-disposed him to kneecap dislocation. Further, Dr. Moore testified on direct examination that Employee's injury could have resulted from moving from a squatting position to a standing position regardless of where he was at the time:

Q: So taking the fact that he is actually located at work out of the equation, there's nothing that he's doing – he's not lifting anything; he's not carrying anything; he's not bending down to pick anything up. Without anything like that, there's no actual relation to work. It's just his knee giving out because of the motion of him rising from a squatting position; is that correct?

. . . .

A: I guess that is a fair statement. I mean, I think it is his – if he would have performed the same maneuver in another location, not at work, could it have come out of place? The answer to that would be, yes.

Q:      So in that situation, it's basically his body weight and the type of knee that he has that are causing his knee to dislocate at that time; is that correct?

A:      At this point in time, I would say yes to that.

When asked whether pulling parcels of fabric across the floor could have contributed to the patellar dislocation, Dr. Moore testified that it was "possible" if doing so caused Employee's legs to become fatigued:

Q:      [A]ssume, if you would, that he was working, pulling material on a – on a floor that weighed anywhere between 100 pounds and 3 or 400 pounds or more and that his knee was fatigued at the time of this injury. Would that have an effect on this injury?

A:      If someone had done a significant amount of exertion in their quadriceps, in particular work fatigue, that's what controls your kneecap, so you would have less control of your kneecap. So, yes, that is possible.

Q:      Well, is it more likely – if the history is true, would it be more likely than not – or cause – I mean, a contributing factor?

A:      I would say it's a contributing factor. I guess I would have to know exactly how much he lifted. How tired he was. I mean, there are a lot of different permutations. But it is certainly possible that if he did have significantly fatigued quadriceps that that would have given him less control over his kneecap.

Q:      Okay. So it's fair to say that if he does a lot of exertion on his knee immediately prior to this injury that that physical exertion, more likely than not, did contribute to this condition? Is that fair?

A:      If he was significantly fatigued, I would say that, yes, that would have helped contribute to his injury.

On cross-examination, Employer likewise questioned Dr. Moore regarding pulling heavy materials across the floor:

Q:      To clear up a few things that were asked of you earlier, you were asked about if he had been pulling stuff across the ground, if that might have had an effect on it. He didn't give you a history of pulling anything previous to that, did he?

10

A: We did not specifically discuss that – at least not that I documented or not that I remember.

Q: And at this point without specifics, it would be basically speculation for you to determine whether or not that had any relation to it; is that correct?

A: That is correct.

. . . .

Q: Okay. And as far as – going back to the pulling real quick, you are not rendering an expert opinion here today saying specifically those actions did contribute or cause the injury in question; is that correct?

A: Prior to today, I had not heard anything about those actions.

Q: So you are not rendering an expert opinion on those today; is that correct?

A: I am more than willing to say that . . . increased fatigue, and the loss of quadriceps function and tone could lead to an increased risk of instability. But exactly how that relates to all of the lifting, pushing or pulling that he was doing, I have no way of commenting.

On re-direct examination, Dr. Moore was again asked whether fatigue to Employee's quadriceps increased his risk of knee instability. He again replied, "it could have." When asked whether fatigue was a "contributing factor," Dr. Moore replied that "[i]n theory, it could be." When he was asked yet again whether "dragging this stuff across the floor" was a "contributing factor," he answered that "[i]t could be."

Dr. Moore was also asked whether being in a cramped space in an awkward position and rising from a squat while twisting could cause the injury Employee suffered. He replied that it was "possible." And when asked whether this mechanism of injury more likely than not caused the injury, he replied, "that is really hard for me to actually answer correctly not knowing exactly what it looks like and how big the space is relative to his body. I mean, if he were in a cramped space where he had to contort and rotate as he is getting up, could that lead to an increased risk for his patella to come out of place? It could." Dr. Moore agreed that Employee's body weight and mechanics caused his knee to dislocate assuming he was not touching anything as he was getting up, "tight space or not."

11

We are persuaded that the evidence preponderates against the trial court's finding that Employee's knee injury arose primarily out of his employment. Although there is no dispute that Employee suffered a dislocation of his patella and a tear of the patellofemoral ligament in his knee, Dr. Moore testified repeatedly Employee's work activities on July 30, 2014 "could have" contributed to the injury or were a "possible" cause of the injury, "in theory." While such testimony may have been sufficient at one time to carry the day for an injured worker, it is not sufficient today. As noted above, an injured worker is entitled to benefits "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). Dr. Moore's testimony falls short of meeting this standard. It is uncontroverted that Employee had prior knee problems, had prior surgeries on his knees, and had an underlying condition that pre-disposed him to kneecap dislocation. The record is devoid of evidence establishing that the employment contributed more than fifty percent in causing the injury considering all causes. To the contrary, Dr. Moore, the only medical expert to testify, agreed that Employee's knee dislocated "tight space or not."

Even under pre-reform law when a liberal or remedial interpretation of the law was permitted, medical proof linking the injury to the employee's work could "not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility." *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987). S*ee also Reeser*, 938 S.W.2d at 692 ("merely speculative or conjectural proof" is insufficient to support compensability). Today, an injury causes the need for medical treatment within a reasonable degree of medical certainty if "*in the opinion of the physician*, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014) (emphasis added). A fair reading of Dr. Moore's testimony reveals that his statements regarding causation do not rise beyond "speculation or possibility." Although the record contains a letter dated August 8, 2014 in which Dr. Moore noted his initial "impression" that Employee's "fall at work did directly cause his most recent patellar dislocation," his subsequent testimony makes clear that his initial "impression" was just that and no more.

Accordingly, we hold that insufficient medical proof exists from which the trial court could determine that Employee's knee injury arose primarily out of his employment. It follows that the trial court erred in ordering medical treatment, the payment of outstanding medical bills, and the payment of past temporary disability benefits.

## C.

The trial court found that medical proof of causation was unnecessary because Employee suffered an obvious injury given that his kneecap was displaced to the side of

his leg. Employer challenges the trial court's conclusion, asserting that the injury is not obvious and, therefore, expert medical testimony is required to establish causation. Employer also contends that, if the injury is in fact obvious as the trial court found, it was just as obvious when the trial court previously denied benefits based on its prior findings that the injury was idiopathic in nature and that no special hazard or condition of the work contributed to the injury.

Prior to the 2013 Workers' Compensation Reform Act, the law was clear that a workers' compensation claimant did not have to establish by expert medical testimony a causal relationship between the injury and the claimant's employment in "the most obvious, simple and routine cases." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). In light of the new statutory language found in sections 50-6-102(13)(B) and 50-6-102(13)(C), it is unclear whether expert medical testimony is now required in cases deemed to be "obvious, simple and routine." However, neither party has raised the continued viability of this pre-reform principle on appeal, and it is unnecessary for us to decide the issue to resolve this appeal.

Nonetheless, we disagree with the trial judge's conclusion that expert medical evidence is unnecessary in this case. Although the injury itself – the displaced kneecap – may arguably be characterized as obvious, its relationship to Employee's work activities is not. Again, it is uncontroverted that Employee had pre-existing knee problems that required multiple surgeries. It is also uncontroverted that he suffered from an underlying condition which pre-disposed him to kneecap dislocation. And Dr. Moore, referring to the area where Employee was tying the wire behind the baler, stated that Employee's knee dislocated "tight space or not." Whether standing up from a squatting position would be sufficient to dislocate a kneecap is not "the most obvious, simple and routine" case even assuming this pre-reform principle survives the adoption of sections 50-6-102(13)(B) and 50-6-102(13)(C).

In short, the trial court erred in concluding that medical proof was unnecessary to establish the requisite causal link between the claimant's employment and his injury. And, as indicated above, we disagree with the trial court's alternative finding that Dr. Moore's testimony satisfies the statutory requirements.

*Bifurcation of the Trial*

Finally, we must address Employer's argument that the trial court erred by providing inconsistent instructions regarding whether the trial would be bifurcated and the nature of the issues that could be addressed. At the outset of the trial, the trial judge informed the parties that "we will be bifurcating this hearing" to address compensability alone. However, when Employee's counsel inquired whether he could "go beyond and ask for a temporary total disability and things like that . . . today," the trial judge answered in the affirmative. The judge then stated "we're not talking about permanency

13

today" and added "that's the reason for the bifurcation, if there is in the end . . . a bifurcated hearing."

At the conclusion of the trial, the trial judge informed the parties that whether "we bifurcate the proceeding" would depend on how the court ruled. Apparently confused by the court's inconsistent comments, Employer's counsel sought clarification and said "to be clear, you're not bifurcating the trial at this point." The trial judge replied "correct," but then said "[h]ow I rule will depend on whether we bifurcate the proceeding." Then, in the trial court's order deciding the case, the court observed that "these proceedings have been bifurcated."

Employer contends that the trial court's instructions regarding bifurcation were confusing and prejudicial because the parties presented their evidence consistently with how the trial judge initially indicated the trial would proceed, only to find out at the end of the trial that the court had not yet decided to bifurcate the trial. Employer also argues that, despite the court's instructions at the outset of the trial that compensability would be the sole focus of the hearing, the trial court permitted Employee to present evidence on other issues, namely temporary disability and medical expenses. While we are sympathetic to Employer's argument, this issue is pretermitted given our resolution of the causation issue. Whether the trial court erred in denying Employer's motion in limine is pretermitted as well.

## Conclusion

For the foregoing reasons, we hold that the evidence preponderates against the trial court's decision and violates section 50-6-217(a)(3)(A) and (E). Accordingly, the trial court's decision is reversed, and the case is remanded for entry of an order dismissing the claim.

Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board

14



**FILED**

**November 9, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 11:15 A.M.**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Joseph Kolby Willis | ) | Docket No. 2014-05-0005 |
| | ) | |
| v. | ) | |
| | ) | State File No. 57582-2014 |
| All Staff | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of November, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Gene Hallworth | | | | | X | hallworthg@aol.com |
| Duane Willis | | | | | X | dwillis@morganakins.com |
| Joshua Davis Baker, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov